Patrick M. Flatley
United States Bankruptcy Judge

Dated: Friday, October 21, 2016 4:31:04 PM

# IN THE UNITED STATED BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ALLEN L. CRITES, | ) | Case No. 15-bk-474 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| GARY L. VANCE, LLC d/b/a SOUTH | ) | |
| BRANCH VALLEY LIVESTOCK | ) | |
| EXCHANGE, DEREK CRITES, | ) | |
| and WAYNE CRITES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 15-ap-30 |
| | ) | |
| ALLEN L. CRITES, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Gary L. Vance, LLC dba South Branch Valley Livestock Exchange ("Vance") and Wayne Crites (together the "Plaintiffs")[1] filed this adversary proceeding seeking a determination that Allen Crites (the "Debtor") is ineligible for a discharge under § 727 of the Bankruptcy Code or that certain claims they assert against him are nondischargeable under § 523(a) of the Bankruptcy

---

[1] Derek Crites is also included as a named Plaintiff in both the caption and the body of the Second Amended Complaint. However, the Second Amended Complaint sets forth 8 causes of action, and none of those causes of action belong to Derek Crites. The court previously dismissed Derek Crites from this case, and although it permitted the Plaintiffs to amend their complaint and include Derek Crites, unless otherwise asserted, it now believes that Derek Crites was included in the caption and the introduction of the complaint in error, and is not a proper plaintiff in this action.

1

Code. The Debtor asserts that summary judgment is inappropriate here because the Plaintiffs' claims are legally deficient and there exists a genuine dispute of material facts in that regard.

For the reasons stated herein, the court will deny the Plaintiffs' motion for summary judgment.[2]

### I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment must make a prima facie case by showing: first, the apparent absence of any genuine dispute of material fact; and second, the movant's entitlement to judgment as a matter of law on the basis of undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 248 (1986).

The movant bears the burden of proof to establish that there is no genuine dispute of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). Showing an absence of any genuine dispute as to any material fact satisfies this burden. *Id*. at 323. Material facts are those necessary to establish the elements of the cause of action. *Anderson*, 477 U.S. at 248. Thus, the existence of a factual dispute is material—thereby precluding summary judgment—only if the disputed fact is determinative of the outcome under applicable law. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). "Disposition by summary judgment is appropriate . . . where the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted); *see also Anderson*, 477 U.S. at 248.

If the moving party satisfies this burden, the nonmoving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. *Celotex Corp.*, 477 U.S. at 322-23. The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Shaw*, 13 F.3d at 798. However, the court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need for a trial." *Anderson*, 477 U.S. at 249-50. Nor should the court make credibility determinations.

---

[2] The court's analysis focuses on Counts I-III and V-VII which allege actions under § 523(a). The memorandum opinion is devoid of reference to Counts IV and VIII of the Plaintiffs' Second Amended Complaint, which alleges causes of action under § 727, because the court dismissed those claims, or claims substantially similar thereto, with prejudice by order dated December 23, 2015. Those claims have therefore already been finally adjudicated.

*Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317.

## II. BACKGROUND

The relevant facts in this case pertain to a transaction to procure cattle from Vance by several members of the Crites family[3] and the course of dealing leading up to that transaction. On April 27, 2013, Wayne Crites agreed to purchase 63 head of cattle from Vance for $44,413.43.[4] Wayne Crites did not tender payment (the "May 7 check") for the full purchase price to Vance until May 7, 2013. The May 7 check was written from an account belonging to the Debtor described as his "Livestock Account." Wayne Crites tendered the check on May 7, 2013, but post-dated it for May 8, 2013. Although the Debtor was not present at the cattle auction or when Wayne Crites tendered the May 7 check, he signed the check. On May 7, 2013, Vance deposited the check, but it was returned the following day because the Debtor's Livestock Account lacked sufficient funds to cover the check. In response, Vance contacted both Wayne Crites and the Debtor. Notably, the Livestock Account lacked sufficient funds to cover a $44,413.43 check on the date of the sale, the date Wayne Crites tendered the check, and the date indicated on the check.[5]

On May 13, 2013, Wayne Crites deposited $44,413.43 into the Debtor's Livestock Account, ostensibly to cover the amount owed to Vance. However, neither Wayne nor the Debtor issued a second check to pay for the cattle purchased on April 27, 2013. According to the Plaintiffs' Second Amended Complaint (the "Complaint"), at some point after May 13, 2013, the Debtor withdrew $21,000 in funds from the Livestock Account. The Complaint alleges that because of this action, Wayne Crites never issued a second check to Vance. However, the record

---

[3] Wayne Crites and the Debtor are brothers. Derek Crites is the son of Wayne Crites.

[4] Wayne Crites actually conducted the sale in the name of his son Derek Crites in order to comply with various laws relating to the purchase and sale of livestock as found in the Packers and Stockyards Act, 7 U.S.C. § 201, *et seq*. Although Derek Crites is once again a named party to this litigation, his involvement in the transaction, though noted by the court, is inconsequential.

[5] The respective daily balances were $5,589.20 on April 27, 2013, ($40,038.16) on May 7, 2013, and $4,129.06 on May 8, 2013.

3

fails to indicate when the Debtor withdrew the funds from the account and what he did with them.[6] Moreover, the Plaintiffs do not reference a $21,000 withdrawal or a check for $21,000 in their motion for summary judgment. Rather, they assert that the Debtor incurred $35,813.71 in personal expenses between April and June 2013 which depleted the Debtor's Livestock Account and caused the May 7 check to bounce.

From at least January 16, 2013 until May 1, 2013, Wayne and Derek Crites and the Debtor engaged in a course of dealing similar to the April 27 cattle purchase. Approximately once a week, Wayne Crites would purchase cattle at auction under Derek Crites's name using checks signed by the Debtor and drawn from the Debtor's Livestock Account. Generally, Wayne Crites would deposit an amount slightly larger than the purchase price of the cattle into the Livestock Account roughly five days after the purchase. Wayne Crites always made those deposits on the same day that the corresponding check cleared the Debtor's account. Such transactions occurred on March 20, March 27, April 3, April 17, April 24, and May 1 of 2013. Two additional transactions occurred that differed from the routine set forth above. First, on April 20, 2013, the Criteses made a $23,713.77 cattle purchase, however the bank records do not indicate that Wayne Crites made a deposit in that or a similar amount on May 7, 2013—the date that check cleared. Second, in the April 27 transaction detailed above, although Vance deposited the $44,413.43 check on May 7, the accompanying deposit of an identical amount was not made until May 13, 2013.

After Vance failed to receive payment for the April 27, 2013 cattle transaction, it filed a complaint in the Circuit Court of Hardy County seeking a judgment against Wayne and Derek Crites and the Debtor. Derek and Wayne Crites then filed cross-claims against the Debtor seeking to recover $44,413.43. Before the state court reached a resolution, the Debtor filed his bankruptcy petition here, effectively staying the state court proceeding.

### III.  ANALYSIS

The Plaintiffs' Complaint sets forth eight counts. Vance alleges Counts I-IV and Wayne Crites brings Counts V-VIII. The court previously dismissed with prejudice the claims in Count IV brought by Vance and Count VIII brought by Wayne Crites. All remaining counts relate to §

---

[6] The Plaintiffs make repeated reference to the Debtor's use of the funds to pay a debt of the Debtor's son, but also reference him withdrawing the money. Based on the banking records submitted to the court, it is unclear what happened because they show neither a withdrawal nor a check written in the amount of $21,000 during the pertinent time.

523 of the Bankruptcy Code and seek a determination that certain claims are nondischargeable. Counts I and V invoke § 523(a)(2)(A) of the Bankruptcy Code and allege that the Debtor obtained property by actual fraud, false pretenses, or a false representation. Specifically, Vance asserts in Count I that the Debtor acted in concert with Wayne Crites and Derek Crites to obtain 63 head of cattle without paying for them. Wayne Crites asserts in Count V that the Debtor induced him to deposit funds into the Livestock Account by representing, through a course of dealing and actual representation, that the funds would remain in there until checks for the purchase of cattle cleared. Wayne Crites goes on to assert that the Debtor used the funds for personal or familial purposes. Counts II and VI invoke § 523(a)(4) of the Bankruptcy Code and are based on allegations that the Debtor obtained property by fraud or defalcation while acting in a fiduciary capacity and that the Debtor embezzled funds from the Livestock Account. Specifically, Vance alleges in Count II that the Debtor held $44,413.33 in trust for both it and Wayne Crites, but that he converted these funds for personal use. Similarly, Wayne Crites asserts in Count VI that the Debtor held $44,413.43 in constructive trust for him and for the benefit of Vance and that he diverted $21,000 of these funds for his own purposes. Counts III and VII invoke § 523(a)(6) of the Bankruptcy Code and are based on the assertion that the Debtor willfully and maliciously injured both Wayne Crites and Vance. Specifically, Vance asserts that the Debtor was aware of all of the facts relating to the April 27 cattle transaction and that he intentionally removed funds from the Livestock Account in a malicious nature. Wayne Crites also asserts in Count VII that the Debtor acted maliciously by simply stealing $21,000 in funds entrusted to him from Wayne Crites with knowledge that it would harm both Wayne Crites and Vance.

     The Plaintiffs assert that the record clearly establishes all of their allegations, and that the court should grant them summary judgment. In response, the Defendant simply argues that the Plaintiffs have not satisfied their burden in demonstrating any of their claims. Moreover, he asserts that there are significant disputes of material facts. As to the individual allegations, the Debtor asserts that the Plaintiffs do not indicate any representations that would have induced either Plaintiff to provide the Debtor with property, thus asserting that §523(a)(2)(A) is inapplicable. The Debtor further argues that § 523(a)(4) is inapplicable because the Plaintiffs fail to assert any fiduciary relationships between the Debtor and Wayne Crites or Vance. Regarding § 523(a)(6), the Debtor argues that the Plaintiffs assert neither injury to a person or property caused by him, nor a credible accusation that the Debtor acted willfully or maliciously with an intent to harm either

Plaintiff. Finally, the Debtor asserts that he did nothing more than use his own funds for personal expenses, and thus clearly has no nondischargeable liability to either plaintiff.

The Plaintiffs bear the burden to demonstrate by a preponderance of the evidence that the Debtor's debt is nondischargeable under one of the sections set forth above. *Grogan v. Garner*, 498 U.S. 279, 291 (1991) (holding that the standard of proof for the dischargeability exceptions in § 523(a) is the preponderance-of-the-evidence standard). Exceptions to discharge under § 523 are construed narrowly in favor of providing debtors with a fresh start. *See Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999).

A.  11 U.S.C. § 523(a)(2)(A)

Vance asserts that the Debtor violated § 523(a)(2)(A) by conspiring with Wayne and Derek Crites to fraudulently obtain cattle. It alleges that the May 7 check and course of dealing implicitly represented an intent to pay him for the cattle and induced him to deliver the cattle to the Debtor without receiving payment. Wayne Crites asserts that the Debtor represented to him that the Debtor would hold the funds related to the cattle transaction in his Livestock Account until Vance could negotiate a check for the debt, but that the Debtor instead used the funds for personal or familial purposes. Thus, Vance asserts that the Debtor both made a fraudulent representation and engaged in actual fraud, while Wayne Crites only asserts that the Debtor made a fraudulent representation.

Section 523(a)(2)(A) excepts from discharge any debt for money or property, to the extent the debt was obtained by "false pretenses, a false representation, or actual fraud." As a threshold issue, the exception to discharge only applies if the debtor actually obtained property or money by false pretenses, a false representation, or by actual fraud. 4 *Collier on Bankruptcy* ¶ 523.08[a]. However, the benefit obtained by the debtor may be direct or indirect. *In re Goodwich*, 517 B.R. 572, 587 (Bankr. Md. 2014).

The Fourth Circuit held that a creditor asserting a claim under § 523(a)(2)(A) must prove five elements by a preponderance of the evidence—namely, "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages." *Nunnery v. Roundtree (In re Roundtree)*, 478 F.3d 215, 218 (4th Cir. 2007). However, the Supreme Court recently expanded the application of § 523(a)(2)(A) by concluding that the inclusion of "actual fraud" within the provision indicates a clear Congressional intent to except from discharge debts incurred through fraudulent actions

6

distinct from false representations. *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (May 16, 2016). Thus, the five step analysis set forth in *Nunnery* still applies when making determinations regarding dischargeability if property was allegedly obtained by false representation or false pretense, but does not apply with regard to alleged actual fraud.

In finding that "actual fraud" can exist without a misrepresentation, the Supreme Court expanded the scope of § 523(a)(2)(A) in cases where "actual fraud" is alleged. The terms included within § 523(a)(2)(A), including "actual fraud," are interpreted as defined at common law. *Field v. Mans*, 516 U.S. 59, 69 (1995). "Actual fraud" is comprised of two parts: "actual" and "fraud." *Husky*, at 1586. At common law, "actual" "denotes any fraud that "involve[es] moral turpitude or intentional wrong." *Id.* (citing *Neal v. Clark*, 95 U.S. 704, 709 (1878). Thus, actual fraud is any fraud carried out with wrongful intent. *Id.* "Fraud" proved far more challenging to define, and while the Court noted that it generally involves "deception or trickery," it elected to refrain from "adopt[ing] a definition for all times and circumstances." *Id*. at 1586-87.

i.   § 523(a)(2)(A) as alleged by Vance

Vance asserts that the Debtor engaged in a civil conspiracy to defraud him of 63 head of cattle without paying the purchase price.[7] In support of this allegation, Vance points to the Criteses course of dealing. Vance also alleges that the Debtor fraudulently misrepresented that he was paying the purchase price by signing the May 7 check. The record fails to sufficiently support either of these contentions at this time. The court will therefore deny Vance's motion for summary judgment as to § 523(a)(2)(A).

As a threshold matter, § 523(a)(2)(A) only provides that a debt is nondischargeable if it was a debt for money or property obtained by false pretenses, false representation or actual fraud. Thus, the Debtor must obtain money or property, either directly or indirectly, from the plaintiff. In this case, Vance transferred 63 cattle to Derek Crites. The Debtor clearly did not receive direct ownership. However, an indirect benefit is sufficient to overcome this requirement. As Vance alleged that Wayne and Derek Crites and the Debtor were working in concert to acquire the cattle,

---

[7] "A civil conspiracy is not a *per se*, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." *Dunn v. Rockwell*, 225 W. Va. 43, (2009).

7

the Debtor may have indirectly benefited if he was indeed conspiring with Wayne and Derek Crites.

The record does not indicate, however, whether the Debtor conspired with Wayne and Derek Crites or obtained some indirect benefit from Derek Crites's April 27 purchase of cattle. Although it is evident that the Criteses worked in concert to purchase cattle from Vance, there is insufficient evidence to demonstrate the presence of any fraudulent intent. In fact, the record fails to consistently demonstrate why the Debtor's Livestock Account lacked sufficient funds to cover the May 7 check. It is unclear, for instance, whether the check failed for insufficient funds due to the failure of Wayne Crites to follow the standard procedure and deposit $44,413.43 into the account on the day the check was negotiated by Vance; due to malfeasance of the Debtor; or due to the $23,713.77 check that cleared the Livestock Account on the same day. Thus, in analyzing whether the Debtor, through a civil conspiracy, committed actual fraud, there is insufficient evidence to demonstrate that fraud involving moral turpitude or intentional wrong occurred. For the same reasons, the record does not demonstrate that the Debtor or his alleged coconspirators intended for the May 7 check to bounce.

Vance also fails to sufficiently support his assertion that his claim is nondischargeable because the Debtor falsely represented that he was paying the full purchase price. First, it is unclear whether this claim operates independently from the assertion that the Debtor was involved in a civil conspiracy, but to the extent that it is an independent allegation, the record fails to demonstrate that the Debtor received any benefit directly or indirectly from the transfer of cattle from Vance to Derek Crites. Second, the record fails to demonstrate that the Debtor made any representation to Vance before it agreed to sell and transfer the cattle to Wayne and Derek Crites. Vance agreed to sell the cattle at an auction held on April 27, 2013. At that time, Vance transferred the cattle to Wayne and Derek Crites. No check or payment changed hands until May 7, 2013. Moreover, the Debtor was not present, and the record does not indicate any communication between the Debtor and Vance prior to May 7, 2013. Thus, the record does not demonstrate that Vance relied upon any representation of the Debtor when deciding to transfer cattle to Wayne and Derek Crites.

ii.  § 523(a)(2)(A) as alleged by Wayne Crites

Wayne Crites asserts that the Debtor induced him to deposit funds into the Livestock Account by both their course of dealing starting January 2013 and by representing that the Debtor

8

would leave the funds in the account until Wayne Crites could tender a check to Vance and Vance could deposit that check. As these allegations relate only to false representations, the five-step analysis set forth in *Nunnery* applies. Once again, however, the record fails to adequately establish the allegations.

Wayne Crites asserts that the Debtor made false representations through both his course of dealing and verbally. The record clearly indicates that Wayne Crites used the Debtor's Livestock Account for cattle purchases. That does not, however, conclusively establish that the Debtor represented that he would not overdraw the account. Rather, the record shows that the Debtor used the account for at least three purposes: cattle transactions involving Wayne Crites, independent cattle transactions, and for paying other expenses. Furthermore, Wayne Crites asserts that the Debtor told him he would not use the money, but this assertion is not supported by anything outside of the allegation in the Plaintiffs' motion for summary judgment. The Plaintiffs elected not to attach an affidavit and there is no written record of this communication. Moreover, the Debtor disputes this assertion. As the presence of a representation is a key element to determining whether a false representation occurred, whether such a statement was made is clearly material. Thus, there is a clear dispute of material fact, and summary judgment is not proper. As the first factor of the *Nunnery* analysis has not been satisfied, further analysis is not necessary.

B.  11 U.S.C. § 523(a)(4)

Both Wayne Crites and Vance assert that the Debtor owed to them fiduciary obligations, and that he incurred debt to them by fraud or defalcation by withdrawing funds from the Livestock Account. The Plaintiffs also jointly assert that the Debtor embezzled funds.

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." § 523(a)(4). Importantly, "while acting in a fiduciary capacity" only qualifies "fraud or defalcation;" acts of embezzlement or larceny do not require the concomitant condition of the act while the individual is a fiduciary. Therefore, an examination of defalcation or fraud is only necessary if the Plaintiffs first demonstrate that the debt arose while the Debtor was acting in a fiduciary capacity. *See In re Parker*, 264 B.R. 685, 700 (10th Cir. BAP 2001) ("The existence of a fiduciary relationship is a threshold issue under § 523(a)(4).").

1.  Fiduciary Capacity

9

The definition of "fiduciary" for purposes of § 523(a)(4) is controlled by federal common law. *Harrell v. Merchant's Express Money Order Co. (In re Harrell)*, No. 98–1728, 1999 WL 150278, at *2–3 (4th Cir. Mar. 19, 1999). Under the federal common law, the term "fiduciary" is limited to instances involving express or technical trusts. *Id.* In an express or technical trust, "[t]he trustee's obligations must have been imposed prior to, rather than by virtue of, any claimed misappropriation of funds . . . ." *Id.* at *3. In general, the concept of a "fiduciary duty" under § 523(a)(4) applies only to technical or express trusts; it does not generally apply to fiduciary duties implied by law from the contract. *In re Bennett*, 989 F.2d 779, 784 (5th Cir.1983). For instance, there is no cause of action under § 523(a)(4) based on the existence of a constructive or resulting trust because those types of trusts serve as remedies for another's breach of duty. *E.g., Guerra v. Fernandez–Rocha (In re Fernandez–Rocha)*, 451 F.3d 813, 816 (11th Cir. 2006) ("'[C]onstructive' or 'resulting' trusts, which generally serve as a remedy for some dereliction of duty in a confidential relationship, do not fall within the § 523(a)(4) exception 'because the act which created the debt simultaneously created the trust relationship.'") (citation omitted). A technical or express trust requires there be a "fiduciary duty" with trust-type obligations that are imposed under statute or common law. *Bennett*, 989 F.2d at 785. As explained by the Court of Appeals for the Seventh Circuit, a fiduciary relationship may be created when there is a "difference in knowledge or power between the fiduciary and principal . . . which gives the former a position of ascendancy over the latter." *O'Shea v. Frain (In re Frain)*, 230 F.3d 1014, 1017 (7th Cir. 2000) (citation omitted). Under this test, a fiduciary relationship includes any relationship that calls for the imposition of the same high standard as a trust, such as "a lawyer client relation, a director-shareholder relation, or a managing partner-limited partner relation" because all these relationships call for the principal to "'repose a special confidence in the fiduciary.'" *Id.* (citation omitted).

Although the determination of whether a fiduciary duty exists to support a § 523(a)(4) cause of action is a question of federal law, "state law is relevant in determining whether a trust obligation exists." *Martinez v. Goodrich (In re Goodrich)*, No. 03–8172, 2004 WL 2758671, at *2 (Bankr. C.D. Ill. Oct. 20, 2004). "[T]he existence of a state statute or common law doctrine imposing trust-like obligations on a party may, at least in some circumstances, be sufficient to create a technical trust relationship for purposes of section 523(a)(4)." 4 *Collier on Bankruptcy* ¶ 523.10[1][d] (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev. 2009). If such an obligation exists under state law, then "the court must look behind the provision to ascertain whether the

relationship possesses the attributes required for the purposes of Section 523(a)(4)." *In re Goodrich*, 2004 WL 2758671, at *2; *see Texas Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342 (5th Cir. 1998) ("A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms 'trust' or 'fiduciary.'"). Relationships demonstrating the requisite attributes have included an ambassador and the property of the ambassador's represented country, *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806 (4th Cir. 2001), a financial advisor committing fraud and found to be a fiduciary by default in a state court judgment, *Pahlavi v. Ansari (In re Pahlavi)*, 113 F.3d 17 (4th Cir. 1997), real estate agents handling closing funds, *Hamby v. St. Paul Mercury Indemnity Co.*, 217 F.2d 78 (4th Cir. 1954), attorneys handling client funds, *Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162 (2d Cir. 1999), a corporate officer and director mishandling corporate funds, *In re Burton*, 416 B.R. 539, 546 (Bankr. N.D.W. Va. 2009) and those acting under a power of attorney to an incompetent person, *Ostrum v. Porter (In re Porter)*, No. 03–118, 2008 WL 114914 (Bankr. N.D.W. Va. Jan. 10, 2008).

In *In re Porter*, this court considered whether an appointee of a durable power of attorney[8] acted in a "fiduciary capacity" to the grantor under § 523(a)(4). Following the Seventh Circuit, this court held that a fiduciary relationship exists under § 523(a)(4) when there is a "'difference in knowledge or power between the fiduciary and principal . . . which gives the former a position of ascendancy over the latter.'" *In re Porter*, 2008 WL 114914, at *3 (quoting *In re Frain*, 230 F.3d at 1017). Employing this standard to the facts of that case, the court bifurcated when the attorney-in-fact was acting in a fiduciary capacity. When the grantor of the attorney-in-fact was competent and aware of the financial decisions being made on her behalf, the attorney-in-fact was not acting in a fiduciary capacity. *Id.* at *4. But when the grantor became incompetent, the attorney-in-fact enjoyed a position of ascendancy; consequently, the relationship metamorphosed such that the attorney-in-fact acted in a fiduciary capacity from the time of the incompetency.

---

[8] In West Virginia, a power of attorney is "'an instrument granting someone authority to act as agent or attorney-in-fact for the grantor.'" *In re Richard P.*, No. 34751, 2010 WL 2723185 (W. Va. July 9, 2010) (quoting Black's Law Dictionary 1290 (9th ed. 2009)); *Napier v. Compton*, 210 W.Va. 594, 558 S.E.2d 593 (W. Va. 2001) ("'A power of attorney creates an agency and this establishes the fiduciary relationship which exists between a principal and agent.'") (citation omitted); *Frazier v. Steel & Tube Co.*, 132 S.E. 723, 724 (W. Va. 1926) ("'It is conceded that, as a general rule, a principal has the right to revoke a power of attorney at any time . . . .'") (citation omitted).

11

i.  Relationship between the Debtor and Vance

There is no indication that the Debtor and Vance had a preexisting relationships sufficient to establish a technical or express trust.  The record also fails to indicate a difference in knowledge or power between Vance and the Debtor.  Rather, the record appears to establish an ordinary debtor-creditor relationship between Vance and the Debtor.  As a constructive trust does not create fiduciary obligations for the Debtor because the debt and the trust were simultaneously created, there is no indication that the Debtor owed any fiduciary obligations to Vance.  Because § 523(a)(4) only finds debts incurred through fraud or defalcation to be dischargeable if committed while acting as a fiduciary, neither of these elements needs consideration as they pertain to the claims brought by Vance.

ii.  Relationship between the Debtor and Wayne Crites

Wayne Crites asserts that the Debtor held the funds in constructive trust for him.  However, the existence of a constructive trust alone does not create fiduciary duties for a debtor.  *Guerra v. Fernandez–Rocha (In re Fernandez–Rocha)*, 451 F.3d 813, 816 (11th Cir. 2006).  Nonetheless, the Debtor and Wayne Crites's relationship predates the Debtor's alleged withdrawal of funds earmarked for Vance from the Livestock Account.  However, the record fails to indicate the origin, if any, of any fiduciary duties owed by the Debtor to Wayne Crites.  Rather, the record indicates that Wayne Crites deposited funds into the Debtor's account, and the Debtor generally held those funds in his account for the purchase of cattle.  Although the Debtor thus possessed funds that previously belonged to Wayne Crites, the record fails to indicate an additional responsibility tantamount to those, for instance, owed to clients by an attorney, real estate agent, or financial advisor as seen in the previously cited cases.  Because the record fails to indicate whether the Debtor owes any fiduciary duties to Wayne Crites, the Plaintiffs have not demonstrated that the Debtor's debt to Wayne Crites should be nondischargeable for fraud or misappropriation by a fiduciary.

2.  Embezzlement

The Plaintiffs also assert that the Debtor embezzled the funds held in the Livestock Account. "Embezzlement" under § 523(a)(4) is defined as the "fraudulent misappropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come."  *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998) (citation omitted).  To establish embezzlement the movant must demonstrate that "(1) the person was

12

lawfully entrusted with property or property lawfully came into the hands of that person, and (2) the property was fraudulently appropriated." *In re Davis*, 262 B.R. 663, 671 (Bankr. E.D. Va. 2001). Fraudulent intent may be inferred from the surrounding facts and circumstances. *E.g., In re Chwat*, 203 B.R. 242, 240 (Bankr. E.D. Va. 1996); *In re Allman*, 147 B.R. 122, 125 (Bankr. E.D. Va. 1992). In contrast, "larceny" occurs under § 523(a)(4) if "the debtor has wrongfully and with fraudulent intent taken property from its owner." *In re Rose*, 934 F.2d 901, 903 (7th Cir. 1991). "Embezzlement" differs from "larceny" in that when money is embezzled, "the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking." 4 *Collier on Bankruptcy* ¶ 523.10[2].

The Plaintiffs have not demonstrated that the Debtor fraudulently appropriated funds held in the Livestock Account. First, there are disputes of material fact as to what funds, if any, the Debtor removed from the Livestock Account, and of when such withdrawals occurred. The Plaintiffs' own briefing demonstrates this discrepancy. It is thus unclear whether the Debtor withdrew funds before or after Wayne Crites deposited $44,413.43 into the Livestock Account on May 13, 2013. Moreover, if the pertinent withdrawals occurred before that deposit, the Plaintiffs fail to establish that the Debtor misappropriated those funds, as the record does not sufficiently establish whose funds were in the account at that time and if those funds were subjected to a limited purpose. Finally, the Debtor asserts that Wayne Crites owed him a sum of more than $22,000 and any withdrawal from the account that he made related to the repayment of that debt. As that fact establishes an underlying dispute of material fact as to the ownership of the funds, summary judgment cannot be entered in the Plaintiffs favor as to the Debtor's alleged embezzlement.

C.  11 U.S.C. § 523(a)(6)

Both Plaintiffs assert that the Debtor willfully and maliciously harmed them, thus their debts should not be discharged in accordance with § 523(a)(6). Specifically, Vance asserts that the Debtor withdrew $21,000 of $44,413.43 from his Livestock Account despite knowing that that amount was dedicated to paying Vance. Likewise, Wayne Crites asserts that the Debtor took money from the Livestock Account knowing that it would cause the May 7 check to bounce and knowing that it would result in harm to Wayne Crites.

Section 523(a)(6) provides that a discharge in bankruptcy does not apply to any debt that arises from the "willful and malicious injury by the debtor to another entity or to the property of another entity." § 523(a)(6). The test is conjunctive—the debtor's conduct must be both willful

13

and malicious. *E.g., In re Miera*, 926 F.2d 741, 743 (8th Cir. 1991) (noting that willful and malicious are distinct elements of § 523(a)(6) exception to discharge). For a debt to be excepted from a debtor's discharge under § 523(a)(6), "the plaintiff must prove three elements by a preponderance of the evidence: (1) that the defendant's actions caused an injury to the plaintiff's person or property, (2) that the defendant's actions were willful, and (3) that the defendant's actions were malicious." *In re Raeder*, 409 B.R. 373, 383 (Bankr. N.D.W. Va. 2009).

Section 523(a)(6)'s exception from discharge is associated with the law of intentional torts, and conduct that is negligent or reckless remains dischargeable. *Kawaauhau v. Geiger*, 523 U.S. 57, 60 (1998). The acts done must be with actual intent to cause injury. *Id.* at 61. ("[N]ondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.") (emphasis in original). An intentional act alone "does not necessarily mean that he acted willfully and maliciously for purposes of § 523(a)(6)." *Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 728 (4th Cir. 2006). For an injury to be "willful," the debtor must actually intend to cause injury. This sort of intentional conduct includes those actions where the debtor knows the consequences flowing from the alleged act are certain, or are substantially certain to occur. *See Barclays American/Business Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir. 1985).

"Malicious" under § 523(a)(6) means that the debtor's act was committed "deliberately and intentionally in knowing disregard of the rights of another." *First Nat'l Bank v. Statnley (In re Stanley)*, 66 F.3d 664, 667 (4th Cir. 1995) ("As used in section 523(a)(6), malicious means wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill-will.") (internal quotation omitted). Debtors may act with malice even if they do not have "subjective ill will toward" and do not intend to injure their creditor. *In re Stanley*, 66 F.3d at 667. Because a debtor will rarely, if ever, admit to acting in a willful and malicious manner, those requirements may be inferred from the circumstances surrounding the injury at issue. *E.g., St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1010 (4th Cir. 1985) ("Implied malice, which may be shown by the acts and conduct of the debtor in the context of their surrounding circumstances is sufficient under 11 U.S.C. § 523(a)(6).").

Both Plaintiffs assert that the Debtor willfully withdrew funds from his Livestock Account after Wayne Crites deposited funds into that account for the purpose of covering the pending withdrawal on that account by way of the May 7th check. Moreover, both Plaintiffs assert that the

Debtor knew that Wayne Crites deposited funds into the Livestock Account specifically for the purpose of funding the account in order to pay Vance. Finally, both Plaintiffs assert that they were harmed as a result of the Debtor's actions when the May 7 check bounced. However the Plaintiffs again fail to convincingly demonstrate that the necessary elements are satisfied.

First, as asserted *infra* Part (III)(A)(i), the record fails to indicate what caused the Debtor's Livestock Account to become overdrawn. Without establishing that Vance's check bounced due to the Debtor's withdrawal of funds from the Livestock Account, the first element, that the defendant's action caused an injury to the plaintiff's person or property, remains unsatisfied. Without establishing that the Debtor's actions definitively caused the Plaintiffs harm, summary judgment under § 523(a)(6) is not proper.

Moreover, although there is no question as to whether any withdrawals were made willfully by the Debtor, the record fails to demonstrate that the Debtor acted maliciously. The Plaintiffs' complaint and motion for summary judgment illuminate that disputes of material facts exist. First, the Plaintiffs assert the Debtor withdrew funds from the account because he believed that he was owed a debt in excess of the funds withdrawn. As conduct is only malicious if it is without just cause and in disregard of the rights of another, a dispute as to whether the Debtor was justified in withdrawing the funds is clearly material, and would help demonstrate that the Debtor's conduct was not malicious. Furthermore, the discrepancies between the Plaintiffs' Complaint and motion for summary judgment complicate the matter. The Complaint asserts that the Debtor withdrew $21,000 at a time after Wayne Crites deposited $44,413.43 into the account to fund the May 7 check. The Plaintiffs' motion for summary judgment, on the other hand, asserts that the Debtor withdrew more than $35,000 over a period of several months. Wayne Crites specifically identifies why this discrepancy is material in his Complaint by alleging

> This scenario did not result from a long course of dealing, of writing checks back and forth between various parties, and one day one person discovering that they were overdrawn in their bank account. Instead, this is an incident of one check for a relatively large amount of money being deposited into Allen Crites' account from Wayne Crites for the specific purpose of paying Gary L. Vance for the cattle purchased by Wayne Crites; and Allen Crites ultimately taking hall of the money, knowing that would make his own check presented for payment of the cattle to be returned for insufficient funds . . . .

Complaint ¶ 53.

Thus, there is a dispute as to what transactions made by the Debtor were allegedly willful and malicious, and thus pertinent to this analysis. Therefore, neither Plaintiff demonstrated why their debts should be excepted from discharge under § 523(a)(6) at this time.

## IV.   CONCLUSION

For the reasons set forth herein, the Plaintiffs have not satisfied their burden of proof to demonstrate that there are no material facts in dispute and that they are entitled to judgment as a matter of law. Therefore, the court does

**HEREBY** DENY the Plaintiffs' motion for summary judgment (Doc. No. 41) filed August 10, 2016.